PEOPLE *v.* MURPHY.

1. RAPE—EVIDENCE—ADMISSIBILITY.

Where prosecutrix in rape has testified that her husband left her a few months before the alleged offense, it is not error to allow her to state that she supported herself after he went away by keeping boarders and by working out.

2. SAME—CRIMINAL LAW—EVIDENCE—HARMLESS ERROR—CURE BY OTHER EVIDENCE.

Prosecutrix in rape testified that, after respondent had inveigled her into the wineroom of a saloon, he told her that any outcry would result in her being arrested for being in a saloon, and that after respondent had accomplished his purpose he went out and that another man came in who claimed to have authority to arrest her. *Held,* that any error resulting from allowing the third person's statement in respondent's absence to be shown was cured by subsequent testimony that after leaving the room respondent went into the saloon proper, that the inmates joked him about "his girl," that he bought beer for several, that one of them then went to the room, and that that one eluded the officer sent to subpoena him.

3. EXAMINATION OF WITNESSES—CORRECTION OF TESTIMONY.

Where a witness on redirect examination corrects a statement

made on cross-examination, and on re-cross is asked if she had a consultation with the prosecuting attorney before making the correction, the prosecuting attorney is properly allowed to ask her if she did not ask him of her own motion if she might not correct the misstatement.

4. RAPE—INSTRUCTIONS—SUFFICIENCY.
Instructions defining rape examined, and *held,* to contain a full statement of what must be shown to warrant conviction.

5. SAME—INFORMATION—INCLUDED OFFENSES.
On an information for rape, a conviction for assault with intent to rape may be had, though there is no dispute as to the fact of the intercourse.

6. CRIMINAL LAW—ACCUSED NOT SWORN—INSTRUCTIONS.
Where accused in a criminal case does not avail himself of the privilege of testifying, it is not error for the court of its own motion to charge that no inference shall be indulged against him on that account.

Error to Muskegon; Russell, J. Submitted May 3, 1906. (Docket No. 149.) Decided September 20, 1906.

Arthur Murphy was convicted of an assault with intent to commit the crime of rape, and sentenced to imprisonment for not less than two and one-half, and not more than ten, years in the State house of correction and reformatory at Ionia. Affirmed.

*Turner & Turner,* for appellant.

*George S. Lovelace,* Prosecuting Attorney, and *Charles B. Cross,* Assistant Prosecuting Attorney, for the people.

MCALVAY, J. Respondent was convicted of the offense of an assault with intent to commit the crime of rape. The act charged occurred in a wineroom back of a saloon in the city of Muskegon on the afternoon of October 26, 1905. From the testimony of the complaining witness, it appears that she was inveigled into this room under the pretext that respondent would telephone to secure her a place to work, and, succeeding in getting her there, he ordered some liquor, began to take liberties with her person,

and after a long struggle he committed the crime. This room was in the extreme rear of the building. The door was shut and a room intervened between it and a room where men were playing cards. Complaining witness was 21 years old, and had one little child. She was not living with her husband. A full statement of the facts is not necessary. That these parties were there on the day in question is admitted. The question in the case was What occurred in this wineroom? The version of the complaining witness is the only testimony as to that fact. After judgment, the respondent has brought the case to this court.

The first assignment of error is because complaining witness was allowed to answer the question:

"*Q.* How did you support yourself after your husband went away?
"*A.* I kept boarders for about a month; after that, working out."

This was at the beginning of her direct examination. She had just testified that her husband had gone away in July or August. This was a proper question, and was not prejudicial to the respondent. It was to show the status of the witness and not objectionable.

Exception is also taken to allowing the following question to be asked the same witness:

"*Q.* I will ask you to state whether or not this man that came into the room after Murphy went out claimed to have authority to arrest you for being in a saloon?
"*A.* Yes, sir."

The witness had testified that respondent had said that if she cried out she would be "pinched" (arrested) for being in a saloon. After the occurrence in the wineroom, where it is claimed the offense was committed, there is no dispute but that respondent went into the saloon. While there the bartender testified that the boys guyed him about his girl; that he ordered beer for the boys at the bar; that Dinan and respondent were together in the

saloon, and Dinan disappeared, going to the rear of the saloon. The complaining witness described the man who came back into the room after respondent stepped out, and who was there when he came back. She also said that he came in there and asked her what she was doing there, and she told him her story while respondent was gone, and upon his return the man asked him what he brought this woman there for, and used her in the way he did. This is the man concerning whom the question is asked which is objected to. When an officer sought to subpœna him at this saloon, he fled out the back way, and could not be found afterwards. Whatever mischief there might be in allowing the question at the time because of the absence of respondent was cured later in the case, when the foregoing facts were disclosed. Respondent had threatened that an outcry would cause her arrest. He was with Dinan in the saloon, and immediately Dinan went back to the wineroom and claimed he had authority to arrest her, and is there when respondent returns. We think it was not error to allow the question to be answered.

Another error is claimed because the following question was permitted to be answered:

"Q. Mr. Cook asked you about a consultation with me. I will ask you whether or not you did not ask whether you could be permitted to make a correction in your testimony?"

On cross-examination certain testimony had been brought out bearing upon the question of the lack of resistance offered by her. Her attention was called to this on redirect examination, and she said it was not correct. On cross-examination she testified that she talked with the prosecutor relative to her testimony, and further testified that she had misunderstood the question relative to the matter referred to. The question under consideration was later asked by the prosecutor. It was proper to allow it. The reference to a consultation with the prosecutor on

cross-examination could have been for no other purpose than to raise an inference that the prosecutor was connected with the correction of the testimony. The question was to show that the witness herself asked if she could correct it.

No requests to charge were submitted to the court by respondent. To the charge as given by the court many errors are assigned. Many of them are simply referred to in the brief for respondent without argument. This is probably indicative that they are not waived, but the practice is not helpful to the appellate court.

The material exceptions to the charge will be considered. It is claimed that no proper instruction was given as to what constitutes the crime of rape. A careful reading of this charge shows that it contains a full statement of what must be shown by the people to warrant a conviction for this offense. The court charged:

"To constitute the crime of rape, it will be necessary for you to find beyond all reasonable doubt that this defendant had carnal knowledge of the body of this young lady by force and against her will, and I mean by that it will be necessary for you to find that the act was committed by force and against the will of this young lady; that she did everything she could under the circumstances to prevent defendant from accomplishing his purpose. If she did not do that it is not rape."

He charged that the jury must find that penetration occurred or there would be no rape. Further:

"You must find that the act was by force and against the will. It is not important whether that act was committed, or if it was committed, by power; that is, by strength or in some other manner. It may have been committed because of fear. It will be necessary for you to find that it was committed by force, as far as the young man is concerned, and against the will of the girl—you must find that she was overcome and overpowered, and that resistance must have continued from the inception to the close, because if she yielded at any time it would not be rape."

The court charged also as to what constituted the offense of assault with intent to commit the crime of rape:

" It will be necessary for you to find that the defendant made an assault upon this young girl, and actually intended to use whatever force was necessary to accomplish his purpose, and if you find that he did that and actually intended that, it would be your duty, and you would be authorized in finding him guilty of an assault with intent to commit the crime of rape, if you find that he ought not to be convicted of the graver charge."

And further, on the same subject:

" If you find that he made an assault, and actually intended to use all the force that was necessary irrespective of anything that she might do to accomplish his purpose."

He further charged that the respondent might be found guilty of an assault and battery if he touched her person rudely or in an insolent manner against her will. He again repeated what he had said of the second offense, and added:

" If he touched her person in a rude and insolent manner in furtherance of that object he would be guilty of that charge."

The court charged correctly as to the presumption of innocence, and repeatedly, that the jury must be satisfied upon all these questions beyond a reasonable doubt, defining what constituted such doubt. We think the charge as to the parts objected to sufficiently explicit, and that the court fairly stated the law of the case to the jury. If respondent's counsel had desired the court to further charge the jury as to any particular proposition, it was his duty to have specifically called the attention of the court to such matter. *People* v. *Ezzo*, 104 Mich. 341.

It is objected that in this case the court was in error in charging the jury that respondent might be found guilty of an offense less than the crime of rape. The action of the court was authorized by the decisions of this court. *People* v. *Miller*, 96 Mich. 119, and cases cited; *People* v. *Abbott*, 97 Mich. 484, and cases cited.

It is further claimed that the court erred in his statement to the jury with reference to the fact that respondent had not been sworn as a witness. The court said:

"That is not a matter you have a right to take into consideration or pass upon at all. He has a right to remain off from the stand if he desired to do so, and there is no inference to be drawn by you because of that fact."

The authorities hold that under statutes similar to the one in this State, it is not error for the court on its own motion to give such a charge. See *People* v. *Provost*, 144 Mich. 17, where the cases are cited and distinguished.

We do not find any error in the case. The judgment of the circuit court is affirmed.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.