PEOPLE *v.* WARNER.

1. CRIMINAL LAW—INFORMATION—ASSAULT—JOINDER OF COUNTS—
ELECTION OF COUNT.
   A count charging the offense of assault with intent to do
   great bodily harm less than the crime of murder may be
   joined with one charging assault with a dangerous weapon,
   but without intending to inflict great bodily harm less
   than the crime of murder, and election between the counts
   could not be required on the ground that distinct offenses
   were charged, where they were committed by the same
   acts, at the same time, and the same testimony must be
   relied on for conviction.

2. SAME—TRIAL—INSTRUCTIONS—WARNING.
   In a prosecution for assault with intent to do great bodily
   harm less than the crime of murder, where the evidence
   showed that defendant deliberately shot in the leg one of
   a party who were trespassing within the curtilage en-
   gaged in a charivari on defendant and his wife, who had
   been recently married, and the defense was that defendant
   feared forcible entry into the house and personal violence
   to himself and wife, *held*, that the charge of the court,
   taken as a whole, properly submitted to the jury the
   questions as to the trespass and threatened assault, and
   defendant's duty to give warning and time enough to
   disperse, before firing designedly.

3. SAME—VENUE—EVIDENCE.
   In criminal trials the venue must be proved by competent
   evidence, beyond reasonable doubt, and a conviction can-
   not be sustained where the record fails to locate the place
   of the crime within the jurisdiction of the court.

4. SAME—JUDICIAL NOTICE.
   The court will not take judicial notice of the existence or
   locatior of a place named which is not the name of an
   incorporated village or township or any other sort of
   municipality in the county where the trial was had, for
   the purpose of establishing a venue.

Exceptions before judgment from Menominee;
Flannigan, J. Submitted April 12, 1918. (Docket
No. 126.) Decided June 3, 1918.

Harvey Warner was convicted of an assault with intent to do great bodily harm less than the crime of murder. Reversed.

*Doyle & Barstow,* for appellant.

*Fred H. Haggerson,* Prosecuting Attorney, and *John J. O'Hara,* Assistant Prosecuting Attorney, for the people.

STONE, J. This case is in this court upon exceptions before sentence. The defendant was convicted of an assault upon one Raleigh Deacon, with intent to do great bodily harm to the said Raleigh Deacon, less than the crime of murder. The information contained two counts. The first count charged the offense above stated, and alleged that it was committed on September 3, 1916, at the township of Mellen, county of Menominee. The second count charged the defendant with having, on September 3, 1916, assaulted the said Raleigh Deacon with a dangerous weapon, to wit, a gun, but without intending to commit the crime of murder, and without intending to inflict great bodily harm, less than the crime of murder. Upon arraignment the defendant pleaded not guilty.

Before proceeding with the trial, counsel for defendant moved the court that the prosecutor be required to elect which count of the information he would proceed under. The motion was denied, and the prosecutor was permitted to "go forward under both counts." Upon the trial it appeared that on Wednesday evening, August 30, 1916, the defendant was married at the home of his bride's parents at "Ingalls, Michigan." Upon that evening between 8 and 15 boys and young men congregated near the house where the ceremony was to be performed, and within the hearing of the young couple uttered vulgar language, the exact words of which do not appear in the record.

On September 3d, the Sunday evening following, between 7 and 8 o'clock, a number of young men and women of the neighborhood congregated at the same house where the defendant and his wife were staying and there made loud and offensive noises, shouting and shaking tin cans, and conducting what is commonly known as a charivari party. The defendant and his wife, being religious people, objected to such a disturbance on Sunday evening. They seem to have viewed the conduct of these young people as a slur upon the sanctity of the marriage ceremony, and in addition to this the defendant's wife was a frail, delicate and sensitive young woman, and the conduct of this charivari excited in her great nervousness and fear that what, as she knew had happened in a former charivari in the same community, might again happen at the hands of the then present assembly.

It appeared in evidence that some time before, a charivari party in that neighborhood had put a ladder up to the window of a room then occupied by a recently married couple, and had taken them from the house, clad in their night clothes, and afterwards put a kimono on the bride and dressed her up in rags. Defendant and his wife had been told of these facts before their marriage. As the population of the settlement was small the defendant and his wife assumed that the charivari crowd on the night in question were the same parties who had conducted the former charivari, and would inflict upon them the indignities practiced before. On the night in question, the charivari, on the defendant and his wife, was conducted by about 20 people. The noise was so loud that it was heard a quarter of a mile away. There was evidence that after the noise had continued for some 20 minutes members of the charivari party began to advance toward the house, which was situated about 40 feet from the fence and gate in front of the house,

upon the highway. The defendant claimed that he could not make his voice heard on account of the noise, and in order to give what he deemed an effective warning he fired from the upstairs window (he and his wife being in the upper room of the house), two shots in the air from his gun by way of warning. It was in evidence that the crowd paid no heed to this warning. A few minutes thereafter, the defendant, who without question was an exceptionally good shot, took thoughtful and deliberate aim with his 22 calibre rifle and fired at a point between the ankle and the knee of the farthest advanced member of the party, who was then within 16 or 18 feet of the house, and within the curtilage; the result being that the said Deacon received a flesh wound in the calf of his leg from the bullet so fired. The court charged the jury in part as follows:

"Now, assuming that these people in the highway or in the yard conducting a charivari—if they came inside the gate and were in the yard, unless the defendant believed they were about to enter the house, force an entrance into the house, he had no right to shoot the rifle at any person in the party.

"The charivari in the roadway, or the charivari conducted in the yard, if no assault was made on the house, amounted to a mere trespass, and the defendant would not have a right to use the gun to prevent a continuance of the trespass until he had warned these people to leave. Now, gentlemen of the jury, did they receive any such warning? That will be a question of fact for you to determine from the evidence in the case. No person is entitled to use a deadly weapon in preventing a trespass which is not of a most serious and aggravated nature, without warning the other party to desist.

"So much for the question of trespass, simply the trespass upon the property.

"With regard to the claim of the defendant that he feared a forcible entry into the house and an assault upon either himself or his wife, or both of them. He is to be judged by the circumstances and surroundings

as they appeared to him there at that time; and you are to take into consideration the excitement and turmoil and the whole situation. If he believed honestly, in good faith and on reasonable ground, that the charivari party, or members of the party, or any one of that party, intended to forcibly enter the house and therein make an assault upon his wife, he had a right to take such means as to him under the circumstances appeared reasonably necessary to prevent the act. So, you see, gentlemen, that in determining whether or not the respondent fired the shot in the lawful exercise of his right of self-defense in behalf of himself or his wife, or both of them, you must settle that from the evidence—the question, first, did he in good faith and upon reasonable grounds believe that the party or some of the party were about to forcibly enter the house, and having entered the house, to make an assault upon him or his wife, or both.

"Did he in good faith believe that? If he did in good faith believe that, the next question for you to take up and determine from the evidence in this case will be this, whether or not, under all the circumstances and surroundings as they appeared to him on that occasion, the means which he used to prevent what he feared was reasonable. If so, then, gentlemen of the jury, your verdict here must be not guilty.

"But if he feared the entry and assault upon himself or his wife, and if you find that the means which he used, under all the circumstances and surroundings, in view of the danger to himself, or indignity to himself or his wife, which was reasonably to be apprehended from the threatened or expected assault; if you find that the means which he used to prevent what he feared were unreasonable and excessive, then he would be guilty of an assault with a dangerous weapon. That the weapon used was dangerous is conceded in the case."

The trial resulted in a verdict of guilty under the first count of the information. There was a motion for a new trial based upon the following reasons:

(1). Because of error in denying defendant's motion that the prosecuting attorney be required to elect

on which count of the information the trial should proceed.

(2) Because the defendant was required, notwithstanding his objection, to submit to trial for more than one offense.

The trial judge denied the motion for a new trial, filing his written reasons, which were duly excepted to by defendant's counsel. In giving his reasons for such denial, the judge said:

"The joinder in one information, in separate counts, of two or more offenses, which, though distinct in point of law, yet spring out of the same transaction, and are covered by the same testimony, cannot operate to the legal prejudice of the accused, and is permissible, and when distinct offenses are so committed and so charged, the people are not obliged to elect. . *People* v. *Sweeney*, 55 Mich. 586; *People* v. *McDowell*, 63 Mich. 229; *Van Sickle* v. *People*, 29 Mich. 61; *People* v. *Sessions*, 58 Mich. 594, 597; *People* v. *Summers*, 115 Mich. 537, 543. See, also, *People* v. *Prague*, 72 Mich. 178; *People* v. *Durham*, 170 Mich. 598, 604.

"But, if the counts were improperly joined, or if the prosecutor should have been compelled to elect, the verdict should not be set aside. Clearly, the submission of the question of the respondent's guilt of either of the offenses charged did not operate to his prejudice. The jury convicted him of the major offense charged. There can be no question of a compromise in the jury room. It is only where the major offense was improperly submitted and there is a conviction of the lesser offense properly submitted, that prejudice could result through compromise."

The questions presented by the exceptions and discussed by counsel are the following:

(1) Should the defendant's motion, made upon the opening of the trial, that the prosecuting attorney be required to elect the count of the information upon which the trial would proceed, have been granted?

(2) Did the court err in instructing the jury that the defendant was obliged to first warn or order away the people of the charivari, before he could, in de-

fense of himself and wife, be excused for firing the final shot at the parties?

(3) Was the evidence sufficient to sustain the verdict?

(4) Did the court below have jurisdiction on the evidence produced, as to the venue?

1. The second count of the information is based upon Act No. 241, Pub. Acts 1915 (3 Comp. Laws 1915, § 15228), which amended a similar act of 1913. It was undoubtedly the intent of the legislature to here create what may be termed an intermediate offense between assault with intent to do great bodily harm, less than the crime of murder, and simple assault and battery. We are of the opinion that the circuit judge did not err in his ruling upon this subject.

As was stated in *People* v. *Sweeney, supra:*

"Election between counts cannot be required on the ground that distinct offenses are charged, where they are committed by the same acts, at the same time, and the same testimony must be relied on for conviction."

This has been the rule in this State for many years, and in our opinion the cases cited by the learned circuit judge, in his denial of the motion for a new trial, are applicable here.

2. Was there error in the charge of the court in the particular complained of? We have read the entire charge with care, and it should be stated that the following language also appears therein:

"Now, gentlemen, coming back again to the question of warning; the respondent testified that he gave warning by firing two shots. It will be for you to say whether or not he honestly and fairly believed that those two shots amounted to a warning to these people. If he in good faith believed that he had already warned them, and had given them time enough after the warning to disperse before firing designedly, then, insofar as the warning is concerned, he gave them the warning."

Taking the entire charge together, we cannot say that any error was committed in the manner in which the case was submitted to the jury. Both phases of the case, that of a trespass and that of a threatened assault upon the defendant and his wife, were considered in the language used, and we find nothing to indicate that the jury failed to comprehend the same.

3. Was there evidence sufficient to sustain the verdict? We shall discuss this question in connection with the fourth point: Did the court below have jurisdiction on the evidence produced as to venue? This court does not generally disturb the rule that it will not examine the weight of the evidence in a criminal case, where there is positive evidence tending to establish the guilt of the defendant, especially where the question is not raised in the motion for a new trial. An examination of this record discloses that it is entirely barren of any evidence that a crime had been committed in Menominee county; the county where the trial was had; and it is in that connection that we consider the third point as to whether the evidence was sufficient to sustain the verdict. We do this because there is no distinct exception upon the subject of venue, nor was the question raised in the trial court; but it is a jurisdictional question,—a question which is essential to the jurisdiction of the court—in order that the trial may be a bar to a further prosecution in another jurisdiction.

It is said by counsel for the people that it cannot be seriously contended that the venue was not proven beyond a reasonable doubt. We cannot agree with this statement. It is true that one or two of the witnesses stated their residence as Ingalls, Michigan. But whether Ingalls is in the county of Menominee or not, does not appear. It is also stated by the prosecuting attorney that the court stated in the charge that the crime was committed in the township of Mellen, Me-

nominee county, Michigan. In this the prosecutor is mistaken. It is true the court called attention to the information, and stated that the offense was charged to have been committed in the township of Mellen, Menominee county. In our opinion this question is controlled by the case of *People* v. *Ayres,* 182 Mich. 241, 246. In that case Justice STEERE, speaking for this court, said:

"It is also urged as a ground of reversal that no venue was proven. The rule is elementary that in criminal trials the venue must be proved by competent evidence beyond a reasonable doubt, and where the record fails to locate the place of the crime within the jurisdiction of the court, whether through inadvertence or otherwise, the judgment must be reversed. While in this State, under section 11919, 3 Comp. Laws (3 Comp. Laws 1915, § 15746), an information is not to be held defective for want of proper venue, and time and place need not be proven exactly as alleged, a venue must nevertheless be proven in all cases to show that the court has jurisdiction of the offense charged. Tiffany's Criminal Law, p. 535; 22 Enc. of Pl. & Prac. p. 827; 2 Bishop's New Crim. Procedure (2d Ed.), p. 1171; 13 Enc. of Ev. p. 929; *Kolman* v. *State,* 124 Ga. 63 (52 S. E. 82); *State* v. *Hartnett,* 75 Mo. 251; *Boykin* v. *State,* 148 Ala. 608 (42 South. 999). The venue is laid in this information as at the township of Penn, county of Cass, and State of Michigan. We have searched in vain all testimony given upon the trial of this cause, as disclosed by the printed record, for any mention of the township, county, or State, as alleged in the information. The only identification of the time and place, when and where the alleged offense was committed, is found in the prosecutrix's testimony, wherein she states that the intercourse which she had with respondent causing pregnancy, resulting in birth of the child she bore (which is the act relied on for conviction), took place on the Underwood farm, in the bedroom, in the house.

"While courts may take judicial notice of the extent and boundaries of political subdivisions, such as counties, townships, cities, and villages, the rule has never been, and cannot be, extended to cover a farm or other

locality only designated and identified by the name of its present or former owner.

"Contending that it is possible to draw from the record, taken as a whole, and particularly from the testimony of nearby neighbors as to their residence, an inference that the Underwood farm is in Penn township, the case of *People* v. *Waller*, 70 Mich. 237 (38 N. W. 261), is cited to sustain this conviction. If any such inference is to be drawn, it locates the Underwood farm in the neighboring county of Calhoun, the only county mentioned by any witness in the record. Although the locality named may have been so well known and familiar to all engaged in the trial that to prove it was in Penn township seemed superfluous, so far as the evidence taken on the trial localizes the Underwood farm in any political subdivision, it might be situated anywhere in the United States, or even in a foreign country. The *Waller Case* deals with political subdivisions, and the court went no further than to hold that judicial cognizance can be taken of the division of a county into townships."

It may be said that to apply the rule here contended for, by defendant's counsel, is to give effect to a technical nicety; but questions affecting the jurisdiction of the court are very frequently somewhat technical. At the same time a question which affects the jurisdiction of the court to try a man for a crime cannot be said to be without merit. It nowhere appears by evidence that the assault alleged to have been made, was in the county of Menominee. The jurisdiction of the trial court is restricted to the trial of persons charged with the commission of offenses in that county, except in cases of change of venue. It is worthy of passing mention that the second count of the information is defective in not charging the offense to have been committed in any township or county, but of course this defect could have been amended. A little more care in the trial of the case would have probably avoided this question of venue and saved the necessity of a new trial.

In 15 R. C. L., under title of "Judicial Notice," at § 20, p. 1083, it is said:

"Courts will take judicial notice of the existence of villages, towns and cities. They will include in this notice the boundary lines of cities and villages that have been established by statute, but they will not recognize the boundaries of cities which have not been established by law."

After speaking of the conflict of authority upon the subject, in § 22, p. 1085, it is further said:

"Unquestionably, if a mere collection of houses be unincorporated, judicial notice cannot be taken of their location, on proof simply of the name that such collection of houses is known by."

To the same effect, and applied in a criminal case, is *State* v. *Bush* (Kan.), 118 S. W. 670, wherein the court said:

"It is not claimed that Whitton is an incorporated municipality; we cannot therefore take judicial notice of its existence or location."

Ingalls is not an incorporated village in Menominee county, nor is it the name of any township or any other sort of municipality in that county. No one knows where as a hamlet, or settlement, it begins, or ends. Probably it is a name given to a locality, by an early settler. Like "Underwood farm," the designation is not sufficient to establish a venue.

Under these authorities, and because the question raised is jurisdictional, we feel constrained to set aside the conviction. The case is therefore reversed, and a new trial granted.

OSTRANDER, C. J., and BIRD, MOORE, and STEERE, JJ., concurred with STONE, J. BROOKE, FELLOWS, and KUHN, JJ., concurred in the result.