PEOPLE *v.* BOMMARITO.

1. CRIMINAL LAW—SEPARATE AND DISTINCT OFFENSES.
    A person should not be subjected to trial for two separate and distinct offenses at one time.
2. SAME—ELECTION OF COUNTS—EVIDENCE.
    The people cannot be required to elect between counts where the offenses charged arose out of the same acts at the same time and the same testimony must be relied on for conviction.
3. INDICTMENT AND INFORMATION—DUPLICITY—MISJOINDER—GAMING—CONSPIRACY.
    Information containing 14 counts was not duplicitous nor was there misjoinder of counts because the various sections of

the penal code pertaining to gambling under which the information is laid may cover separate offenses where each count contained a charge of conspiracy to violate each designated section of the penal code (Act No. 328, §§ 301–306, 309, 372, Pub. Acts 1931).

4. ARREST—WITHOUT WARRANT.

A peace officer may arrest without a warrant when he has reasonable cause to believe that a felony has been committed and that person to be arrested has committed it (3 Comp. Laws 1929, § 17149, as amended by Act No. 84, Pub. Acts 1935).

5. SAME—WITHOUT WARRANT—GAMBLING PARAPHERNALIA.

Policeman's arrest without a warrant of persons in whose presence or on whose persons he found gambling paraphernalia while they were upon or near premises upon which all of them had been present under suspicious circumstances and to which he had gained peaceable access while entertaining a reasonable and honest belief that a felony had been committed by them under the circumstances was not an illegal arrest and seizure of their illegal property was proper (3 Comp. Laws 1929, § 17149, as amended by Act No. 84, Pub. Acts 1935; Act No. 328, §§ 301–306, 309, 372, Pub. Acts 1931).

6. CONSPIRACY—EVIDENCE.

In prosecution for conspiracy to violate the gaming laws where seizure of illegal property in possession of some of the conspirators was properly made it was admissible against all of the conspirators (3 Comp. Laws 1929, § 17149, as amended by Act No. 84, Pub. Acts 1935; Act No. 328, §§ 301–306, 309, 372, Pub. Acts 1931).

7. CRIMINAL LAW—PRIOR CONVICTIONS—EVIDENCE—INTENT.

In prosecution of four defendants, evidence as to prior convictions of three of them was inadmissible to establish guilt of defendants charged with conspiracy to violate the gaming laws but it is admissible to establish intent (3 Comp. Laws 1929, § 17320).

8. SAME—PRIOR CONVICTIONS—EXHIBITS—INTENT.

In prosecution for conspiracy to violate the gaming laws it was not error to use exhibits used in previous convictions of three of the four defendants for the purpose of showing intent (3 Comp. Laws 1929, § 17320).

9. CONSPIRACY—VIOLATION OF GAMING LAWS—EVIDENCE.

In prosecution for conspiracy to violate the gaming laws where there was testimony tending to establish connection between

company whose store was entered by policeman who made the
arrest and another company not a party defendant nor owned
or controlled by any of the defendants, testimony regarding
activities of latter company was properly received (Act No.
328, §§ 301–306, 309, 372, Pub. Acts 1931).

10. SAME—SUFFICIENCY OF EVIDENCE.
  In prosecution for conspiracy to violate the gaming laws, evi-
  dence *held*, sufficient to sustain verdict of guilty on all 14
  counts (Act No. 328, §§ 301–306, 309, 372, Pub. Acts 1931).

Appeal from Recorder's Court of the City of
Detroit; Van Zile (Donald), J. Submitted April 13,
1944. (Docket No. 65, Calendar No. 42,385.) Decided
June 5, 1944. Rehearing denied June 30, 1944.
Certiorari denied by Supreme Court of the United
States November 20, 1944.

Joe Bommarito, Ed Carlton Lacy, Saul Kohn,
and Edward Godderman Weisberg were convicted
of conspiracy to violate the gaming law. Affirmed.

*P. J. M. Hally,* for appellants.

*Herbert J. Rushton,* Attorney General, *Edmund E.
Shepherd,* Solicitor General, *William E. Dowling,*
Prosecuting Attorney, and *Raymond J. DeRyck* and
*Henrietta E. Rosenthal,* Assistant Prosecuting At-
torneys, for the people.

BUSHNELL, J. Defendants Bommarito, Lacy,
Kohn and Weisberg were granted leave to appeal
from sentences following their conviction under an
information containing 14 counts, based upon con-
spiracy to violate the gaming law, Act No. 328,
§§ 301–306, 309, 372, Pub. Acts 1931 (Comp. Laws
Supp. 1940, §§ 17115–301—17115–306, 17115–309,
17115–372, Stat. Ann. §§ 28.533–28.538, 28.541,
28.604).

All of the defendants were apprehended in or
near the premises located at 1431 Broadway in the
city of Detroit, which was a store where phonograph
records were sold by the "Swingland Record Com-

pany.'' Sergeant O'Brien of the Detroit police department had been observing the premises and had seen Weisberg and Kohn enter the place ''carrying a leather zipper bag and a dirty cloth bag like a money bag they use in banks'' and had ''watched them go directly into the store, through the store and into the back room at the rear of the store'' . and later leave the place, carrying nothing. Several evenings afterwards he saw these same defendants come out of the premises. He then left and later that evening returned with other officers and at about 10:40 p. m., he saw Bommarito and Lacy drive up in a car out of which they took a leather bag, through the store and into the back room. He entered the open store and knocked on the door of the back room. When asked who was there, he mumbled ''It is Eddie.'' The door was opened and he saw Bommarito emptying the contents of the bag upon a table where he observed a quantity of money and various gambling paraphernalia which he knew, from his experience as a police officer, was used in the policy, numbers and mutuel business. He placed Bommarito and Lacy under arrest and confiscated the money and gambling property. As he was leaving the premises with Bommarito and Lacy, he saw Kohn and Weisberg standing in front of the store, arrested them for investigation of conspiracy to violate the gambling law and, upon search, found other gambling paraphernalia in their possession. In the back room of the premises were two locked safes. Sergeant O'Brien obtained a search warrant for them and, upon opening the safes, they were found to contain gambling paraphernalia and over $7,000 in money.

Before the jury was sworn defendants filed a motion to quash all counts in the information except

one on the grounds of duplicity and misjoinder of counts, and to suppress the evidence claimed to have been unlawfully seized, both of which motions were denied. The jury found each of the defendants guilty on all of the 14 counts in the information.

Reversal is sought because of the court's failure to quash all but one count in the information, failure to suppress the evidence, error in the admission of prior convictions of Bommarito, Weisberg and Kohn, error in the admission of evidence of the activities of the so-called "Michigan Mutual Distributing Company," not a party defendant and not controlled or operated by any of the defendants, and because the evidence does not support a general verdict of guilty on all 14 counts.

In support of the claim of misjoinder in the information, appellants cite authorities which have to do generally with joinder of distinct and separate offenses where the elements of proof are not the same. There is no question but that the doctrine is well settled that a person should not be subjected to trial for two separate and distinct offenses at one time. *People* v. *Rohrer,* 100 Mich. 126. But it is also well settled that the people cannot be required to elect between counts where the offenses charged arose out of the same acts at the same time and the same testimony must be relied upon for conviction. *People* v. *Warner,* 201 Mich. 547. See, also, *People* v. *Marks,* 255 Mich. 271. The various sections of the penal code pertaining to gambling, under which the information is laid, may cover separate offenses, but we are not here concerned with separate offenses, as such, but rather with the identical charge in each count that defendants conspired and agreed together to violate each designated section of the penal code. By detailing each of the conspiracies separately,

conviction might properly follow on any one or all of the counts and yet result only in the conviction of the crime of conspiracy.

It is contended that evidence seized on the premises at the time of the arrests and that taken from the person of Kohn and from Weisberg's car at the time of their arrests should be suppressed on the ground that the arrests were illegal. It is true that the arrests were made without a warrant but any peace officer may arrest without a warrant "when he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it." 3 Comp. Laws 1929, § 17149, as amended by Act No. 84, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 17149, Stat. Ann. § 28.874). The officer entered the open store and was admitted peaceably to the back room. There he saw gambling paraphernalia in the illegal possession of Bommarito and Lacy. This created a reasonable and honest belief that a felony had been committed, viz., a conspiracy to violate the gambling law. Their arrest without a warrant was justified and the seizure of the illegal property was proper and, as such, was admissible against all of the conspirators. *People* v. *Harter,* 244 Mich. 346. The same reasoning applies to the illegal property found on the person of Kohn and in the car of Weisberg after their arrest, because their presence on the premises at another time under suspicious circumstances and their presence nearby at the time of arrest of Bommarito and Lacy justified the arresting officer in suspecting them of connection with the conspiracy.

Appellants also urge that the court erred in admitting evidence as to prior convictions. The general rule is that such testimony is inadmissible to establish the guilt of defendants as to other distinct

and independent crimes, but such testimony is admissible to establish intent. 3 Comp. Laws 1929, § 17320 (Stat. Ann. § 28.1050), and authorities cited in *People* v. *Hopper,* 274 Mich. 418. Nor was the admission of exhibits used in previous convictions erroneous as showing intent.

There was testimony tending to establish connection between the "Swingland Record Company" and the Michigan Mutual Distributing Company and, therefore, testimony regarding the activities of the latter was properly received.

The record contains sufficient evidence to sustain a verdict of guilty on all 14 counts.

The several judgments are affirmed.

NORTH, C. J., and STARR, WIEST, BUTZEL, SHARPE, BOYLES, and REID, JJ., concurred.