## PEOPLE *v.* ANDRUS.

1. INDICTMENT AND INFORMATION—ELECTION BETWEEN COUNTS—
   EVIDENCE.

   Denial of election between counts of information charging first-
   degree murder and robbery not being armed with a dangerous
   weapon was not prejudicial to defendants on their motion at
   close of proofs, where the prosecution necessarily relied on
   proof of identical facts and circumstances in support of each
   count (CL 1948, §§ 750.316 *et seq.*, 750.530).

2. SAME—SEPARATE OFFENSES—ELECTION BETWEEN COUNTS—EVI-
   DENCE.

   While a person should not be subjected to trial for 2 separate
   and distinct offenses at 1 time, the people cannot be required
   to elect between counts, where the offenses charged arose out
   of the same acts at the same time and the same testimony must
   be relied upon for conviction.

3. SAME—INSTRUCTIONS—FIRST-DEGREE    MURDER—INCLUDED    OF-
   FENSES.

   Charge to jury that it could find either of 5 different verdicts,
   (1) first-degree murder, (2) second-degree murder, (3) man-
   slaughter, (4) robbery unarmed, or (5) not guilty, was jus-
   tified, in prosecution under information containing count
   charging first-degree murder and a count charging robbery
   not being armed with a dangerous weapon, where although the
   victim of the robbery died as a result of the treatment re-
   ceived at the hands of defendants, there was testimony indi-
   cating they had not intended to kill the victim (CL 1948,
   §§ 750.316 *et seq.*, 750.530).

4. CRIMINAL    LAW—INSTRUCTIONS—INCLUDED    OFFENSES—FIRST-
   DEGREE MURDER.

   The fact that there was evidence from which a jury might find
   the defendants guilty of murder in the first degree, as charged,

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Generally as to election between counts, see 27 Am Jur, In-
   dictments and Informations §§ 133–135, 148.
[6] 53 Am Jur, Trial § 492.
[8] 53 Am Jur, Trial § 523 *et seq.*

would not necessarily require that a verdict of the included of-
fense of manslaughter, as permitted by the instructions given,
be set aside and defendants discharged, it being unnecessary
to determine whether the trial court would have erred had he
instructed the jury to return a verdict of guilty of murder in
the first degree or of not guilty (CL 1948, § 750.316 *et seq.*).

5. SAME—ACCOMPLICES—CLAIMED LENIENCY FOR TESTIFYING FOR
PEOPLE—EVIDENCE.

Failure of trial judge to require sister-in-law of an accomplice
in alleged robbery resulting in murder of victim, to produce a
letter written by the accomplice to his brother, husband of the
witness, wherein it is claimed the accomplice stated he had
been promised leniency for testifying on behalf of the people
did not constitute error, where such accomplice denied making
any such statements, the witness denied seeing any such letter
and no *subpoena duces tecum* was served on either the witness
or her husband, since the trial court is not required to assume
that the witnesses for the people had testified falsely.

6. SAME—ARGUMENT TO JURY—REQUESTS TO CHARGE.

Defendants' counsel was not unduly restricted in his argument to
the jury in prosecution for first-degree murder and robbery,
where he was permitted to state, as fully as he desired, his
theory and claim as to applicable legal principles but success-
fully challenged by the prosecutor in his reading to jury of
requests to charge to the jury which he had prepared for sub-
mission to the court.

7. SAME—REMARK OF TRIAL COURT CHARACTERIZING EVIDENCE.

Trial court's remark that there was no evidence that particular
entry in book of deceased storekeeper, the victim of defend-
ants' robbery who had died as a result of treatment accorded
him, that he had sold *2* polo shirts, whereas the deceased had
stated to person who discovered him with hands and feet tied
that deceased had sold *a* polo shirt to a man who subsequently
returned and assaulted him *held,* not to have constituted preju-
dicial error, where record fully supports trial court's remark
as to absence of any proof of forgery of the entry and jury
were obviously aware of the proofs introduced and it does not
appear that the jury could have been misled by either the
objection of the prosecutor or the trial court's remark.

8. SAME—INSTRUCTIONS—REQUESTS TO CHARGE.

Rights of defendant were fully protected in charge to jury in
criminal prosecution and he was not prejudiced by trial court's
failure to give 18 requests to charge in form submitted, where

some were waived and others were covered in substance, or were given in a modified form.

9. SAME—NEW TRIAL—DUE PROCESS—RECORD.
   Denial of new trial and failure of trial court to grant a new trial on his own motion in prosecution for murder in the first degree and unarmed robbery and alleged deprivation of liberty without due process of law *held*, not subjects requiring specific consideration under record showing defendants were accorded a fair trial and were represented by able and experienced counsel and that verdict of manslaughter was fully justified by proofs presented (CL 1948, §§ 750.316 *et seq.*, 750.530).

Appeal from Livingston; Lyons (Willis L.), J. Submitted October 11, 1951. (Docket No. 86, Calendar No. 44,637.) Decided December 3, 1951.

William and Donald Andrus were convicted of manslaughter. Affirmed.

*Louis J. Colombo* and *Stanley Berriman,* for appellant.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Wilfred H. Erwin,* Prosecuting Attorney, for the people.

CARR, J. Defendants were tried before a jury in circuit court on an information containing 2 counts, the first charging the crime of murder and the second robbery not being armed with a dangerous weapon.* A verdict of guilty of manslaughter was returned. Defendants made a motion for a new trial, which was denied. They have appealed, claiming that because of errors occurring during the course of the trial the verdict and the sentences imposed should be set aside.

---

* See CL 1948, § 750.316 *et seq.* (Stat Ann § 28.548 *et seq.*); and CL 1948, § 750.530 (Stat Ann § 28.798).

On the trial of the cause testimony was introduced by the prosecution establishing that for some time prior to April 26, 1949, Frank Cline, the alleged victim of the offenses charged in the information, operated a store in the city of Brighton. Shortly before noon on the date mentioned Mr. Cline was discovered in his place of business with his hands and feet tied, and suffering from severe wounds. Statements made by him at the time indicated that he had been assaulted and badly beaten. He was removed to a hospital where he died about 1:30 a.m. on April 28th following. Subsequently the defendants were arrested on the basis of information indicating that they were connected with the attack. Also taken into custody were William Glenn English and Elmer Chevalier. On the trial of defendants, English and Chevalier were called as witnesses on behalf of the people.

At the time in question William Andrus operated a gasoline filling station near Brighton, and the other defendant was connected in some way with a garage in Detroit. English testified that he worked for Donald Andrus in said garage, that the 2 came to Brighton during the evening of April 25th, and that they discussed with William Andrus and Chevalier the feasibility of robbing the Cline store. Mr. Cline was a man advanced in years, and the tenor of the conversation was that it would be easy to get his money and that he was in the habit of keeping a large sum in the store. On the following day, as English claimed, the 2 defendants went with him to the vicinity of said store. He was given a $20 bill with instructions to make a purchase so that he might discover where the cash register was located.

In accordance with the understanding of the parties, as it is claimed by the people, English entered the store, purchased 2 polo shirts, and was given his change from a cash drawer on the counter. The men

then returned to the filling station operated by William Andrus, where English changed his clothing and obtained about 15 feet of clothesline which he secreted beneath his jacket. English and the 2 defendants thereupon returned to Brighton, English riding with William Andrus in the latter's car. English entered the Cline store and engaged Mr. Cline in conversation. Donald Andrus also entered, came up behind Mr. Cline and, placing an arm around his neck, pulled him over backward. The 2 men then proceeded to tie the victim of the attack, took the cash drawer, and left the store. The money therein was subsequently removed from the drawer, which was hidden behind some brush near a road. The people's proofs indicate that on a subsequent day English informed the officers in whose custody he was the location of the money drawer, and it was discovered on the spot that he pointed out.

English and Donald Andrus left the vicinity of the attack in an automobile belonging to Chevalier, which was parked beside the Cline store. They then went to the filling station of William Andrus and put the money that they had stolen in a cigar box, which was taken by Donald Andrus. Shortly thereafter William Andrus returned to the station. Other testimony was introduced bearing on the conduct of the defendants and their presence in the vicinity of the alleged offense. Defendants denied their guilt, claiming that they had nothing to do with the attack on Mr. Cline or with the alleged robbery. They pleaded an alibi, with reference to which the jury was instructed carefully and at some length by the trial judge in his charge. The issues on the trial quite largely involved the credibility of the witnesses in the case, particularly of William Glenn English. As indicated by the verdict returned, the members of the jury believed, in large part at least, the testimony of the people's witnesses.

The record does not indicate that any objection to the joinder of the counts in the information was made on behalf of defendants. At the conclusion of the proofs, however, motion was made by counsel to require the prosecutor to elect on which count he would rely for conviction. The motion was denied. On behalf of defendants it is now contended that the denial was erroneous and was prejudicial to them. Their argument rests on the theory that the information set forth separate and distinct offenses. Such argument overlooks the fact that the people necessarily relied on proof of identical facts and circumstances in support of each count.

In *People* v. *Sweeney,* 55 Mich 586, the defendant was prosecuted under an information the first count of which charged assault with intent to murder and the second assault with intent to do great bodily harm less than murder. It was held that defendant was not prejudiced by the joinder, and it was further said:

"Neither does the information present a case in which the people could be required to elect between the counts. When distinct offenses are charged in different counts, but are committed by the same acts, at the same time, and the same testimony must necessarily be relied upon for conviction, the prisoner cannot be confounded in making his defense, and the people ought not to be compelled to elect."

In *People* v. *Warner,* 201 Mich 547, the information charged, in separate counts, assault with intent to do great bodily harm less than the crime of murder and assault with a dangerous weapon without intent to commit the crime of murder and without intent to inflict great bodily harm less than murder. A motion was made at the outset of the trial to require the prosecutor to elect on which count he would proceed. The motion was denied. In holding that

the ruling was correct this Court cited and quoted from *People* v. *Sweeney, supra.* Of like import is *People* v. *Rose,* 268 Mich 529, where it was held that the trial court was not in error in refusing to quash the information or to compel an election between counts. In *People* v. *Bommarito,* 309 Mich 139, defendants, before the jury was sworn, moved to quash all counts in the information except one, on grounds of duplicity and misjoinder. The motion was denied. On appeal it was claimed that the denial was erroneous and prejudicial. This Court held otherwise, saying in part (p 143):

"In support of the claim of misjoinder in the information, appellants cite authorities which have to do generally with joinder of distinct and separate offenses where the elements of proof are not the same. There is no question but that the doctrine is well settled that a person should not be subjected to trial for 2 separate and distinct offenses at 1 time. *People* v. *Rohrer,* 100 Mich 126. But it is also well settled that the people cannot be required to elect between counts where the offenses charged arose out of the same acts at the same time and the same testimony must be relied upon for conviction. *People* v. *Warner,* 201 Mich 547. See, also, *People* v. *Marks,* 255 Mich 271."

The foregoing decisions clearly indicate the rule of law obtaining in this State with reference to the matter in question. See, also, *People* v. *Ninehouse,* 227 Mich 480; *People* v. *Cabassa,* 249 Mich 543; *People* v. *Sachse,* 252 Mich 275. In the case at bar the attack on Frank Cline which resulted in his death, and the alleged robbery, involved the same facts and circumstances. The proofs tending to support the charge in the first count in the information also tended to sustain the charge of robbery not being armed with a dangerous weapon. Defendants were

not prejudiced by the denial of the motion to require an election between counts.

In submitting the case to the jury the trial judge charged that it might return any one of 5 verdicts, namely, guilty of murder in the first degree; guilty of murder in the second degree; guilty of manslaughter; guilty of robbery unarmed; or, not guilty. Error is assigned on such charge. On behalf of defendants it is contended that the court erred in permitting the jury to return a verdict of guilty of manslaughter, on the theory that the proofs indicated that the homicide was, under the statute, murder in the first degree because committed in the perpetration or attempt to perpetrate a robbery. It is argued, in substance, that the jury should have been instructed to return a verdict of either murder in the first degree or not guilty, and in support of the contention counsel for defendants call attention to prior decisions of this Court in which the factual situation was such as to justify a charge of the character suggested. See *People* v. *Netzel,* 295 Mich 353, and prior decisions there cited.

It may be noted that in the *Netzel Case,* which was affirmed by a divided Court, the defendant was charged with assault with a deadly weapon without intending to commit murder and without intending to inflict great bodily harm less than murder. The trial judge charged the jury that under the proofs there were 2 possible verdicts, either guilty as charged or not guilty. No charge was given with reference to included offenses. It appears, however, that the defendant in the case was a witness in his own behalf and admitted that on the occasion of the commission of the alleged offense he was armed with a rifle. In view of such situation it was held that the failure to instruct the jury with reference to included offenses was not reversible error. The facts in the case at bar are not analogous.

In *People* v. *Treichel,* 229 Mich 303, 3 young men were convicted of manslaughter under an information charging murder. The testimony in the case indicated that the defendants, in company with another boy then 12 years of age, entered the home of an elderly man who lived alone, tied his hands and feet with wire to a bedstead, and then ransacked the house in the attempt to find money. The death of the victim resulted from the assault made on him. As in the case at bar, the trial judge instructed the jury that a conviction might be had for murder in the first or second degree, or for manslaughter. On appeal it was urged that the jury should have been directed to either convict of murder in the first degree or acquit. In affirming the convictions, it was said in part:

"Counsel for defendants strenuously insist this was error, claiming the information charged murder in the first degree, and it was the duty of the trial judge, under the evidence and their written request, to instruct the jury to confine their deliberations to such degree and, if unable to convict of murder in the first degree, they must find defendants not guilty. Counsel claim they are supported in taking this position by many decisions of this Court. In this they are in error. The information charged murder without specifying method, or means, or circumstances, and, under the information, murder in either degree, or manslaughter, might be found. This Court has repeatedly held, where the charge as laid includes murder in the first degree, and the proofs establish such degree, and no lesser degree, it is not error for the court to instruct the jury that, in order to convict, murder in the first degree must be found. But this Court has not held, under a charge like here laid, the court *must* instruct the jury to find murder in the first degree or acquit. Whether such an instruction may be given or not depends upon the evidence. While

the statute constitutes murder committed in the perpetration of burglary as in the first degree, it does not exclude all lesser degrees if the evidence warrants.

"In many cases such a holding as here asked would make it extremely hazardous for the people in laying the charge. Suppose the charge is murder in the second degree, and the proofs show murder in the first degree, must there be an acquittal? This information charged murder in the first and second degrees, and this was inclusive of manslaughter. The evidence left it open for the jury to find defendants guilty of manslaughter."

Conceding that the verdict might have been guilty of murder in the first degree because committed in the perpetration of a burglary, the Court declined to hold that such verdict was the only one permissible. Attention was directed to testimony indicating that defendants did not make their attack on their victim with the intention of killing him, and did not anticipate that such result would follow. As in the case at bar, the proofs indicated a purpose to prevent interference with the contemplated search for money. Clearly, had defendants intended to kill Frank Cline they would not have resorted to tying his hands and feet with the clothesline which English had taken into the store. The record indicates that in charging the jury as stated the trial judge followed the decision in the *Treichel Case*. In view of the analogous situation presented there, he was justified in doing so.

A somewhat similar question was raised in *People* v. *Miller,* 96 Mich 119. There defendant was prosecuted for the crime of rape, and was convicted of the included offense of assault with intent to commit rape. The proofs on behalf of the people clearly indicated that the offense, if there was such, was rape. On the appeal to this Court it was contended

that the trial judge was in error in charging the jury that they might find the defendant guilty of assault with intent to commit rape or of simple assault. Affirming the conviction, it was said:

"Under such proof it cannot be denied that a verdict of assault with intent to rape is illogical. But an assault with intent to commit rape is necessarily included in every rape. The defendant's counsel are alleging, not an injurious error, but one which, if it could be called an error, has resulted to defendant's advantage. In the case of *Hall* v. *People,* 47 Mich 636, this question was passed upon, and the omission to charge the jury that the defendant might be found guilty of the lesser offense was held to be error, in just such a case as this."

The *Miller Case* was cited and followed in *People* v. *Murphy,* 145 Mich 524. See, also, *People* v. *Jones,* 273 Mich 430.

The decision in *People* v. *Austin,* 221 Mich 635, is also of interest. There the defendants were convicted of murder in the first degree. The proofs indicated that they gave a drink of whiskey to which carbolic acid had been added to one with whom they were having some difficulty. The victim died as a result of the poison. The trial court instructed the jury that the defendants should either be convicted of murder in the first degree or acquitted. On appeal it was claimed that the instruction was erroneous, and that the court should have submitted to the jury the included offense of manslaughter. In reversing the case on the ground that the charge was erroneous, it was said:

"Homicide is the killing of a human being by a human being. It may, or may not, be felonious. If felonious, it is either murder or manslaughter, dependent upon the facts and circumstances surrounding the killing. To constitute murder, the killing must have been perpetrated with malice

aforethought, either express or implied. The intent to kill will be implied when death results from poison intentionally administered. If it appears that the poison was not administered with intent to take life, but to aid in the perpetration of another crime, or in order to accomplish an unlawful act, it is no less murder. But where it is not so administered, and where death as a result is so remote a contingency that no reasonable person could have taken it into consideration when administering the poison and could not have contemplated that death would result therefrom, the homicide is manslaughter only. The statute classifies all murders perpetrated *'by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing'* as murder in the first degree. Murder by poison is so included because it results from a wilful, deliberate and premeditated act. Administering poison with intent to kill is necessarily so. That the intent with which the poisonous substance is administered is material to the issue presented on such a charge was clearly recognized in *People* v. *Thacker,* 108 Mich 652, and *People* v. *MacGregor,* 178 Mich 436. In each of these cases this Court held that the prosecution might show that the defendant, about the same time, was giving poison to another inmate of the household, as bearing upon the intent with which it was administered to the deceased person. The reasoning in *Wellar* v. *People,* 30 Mich 16, and in *People* v. *Droste,* 160 Mich 66, is instructive on the general rule that where there is testimony from which the jury might find the absence of such a felonious intent as is necessary to constitute murder, an instruction that they might convict of manslaughter should be given. On the record here presented, the jury should have been so instructed."

Under the prior decisions above cited, we think the trial court in the case at bar was not in error in submitting to the jury the included offenses of

second degree murder and manslaughter. As in
*People* v. *Treichel, supra,* the proofs were sufficient
to support a verdict of guilty of the offense charged,
but such fact does not require that the verdict re-
turned by the jury be set aside and defendants dis-
charged. We need not consider whether the trial
judge would have erred had he instructed the jury
to return a verdict of guilty of murder in the first
degree or of not guilty. On the factual situation
presented it cannot be said that the verdict of the
jury was rendered without a proper basis therefor.
See *People* v. *Droste,* 160 Mich 66. Appellants' claim
that the verdict and sentences should be vacated for
such reason is without merit.

Among the witnesses for the people on the trial
were Richard English and Juanita English, the
brother and sister-in-law, respectively, of William
Glenn English. On cross-examination Mrs. English
was questioned by counsel for defendants with ref-
erence to the contents of certain letters written by
William Glenn English, while he was in jail, to her
husband. Counsel inquired specifically with ref-
erence to statements indicating that the writer had
been promised leniency by the prosecutor for testi-
fying on behalf of the people. Later in the course
of the trial a sister of defendants, testifying in their
behalf, claimed that she read such a letter that was
in the possession of Juanita English. While on the
stand the latter was requested to produce in court
all letters written by her brother-in-law to her hus-
band. This she indicated an unwillingness to do.
It is now claimed that the trial court erred, to the
prejudice of the defendants, in not requiring Mrs.
English to produce said letters, particularly the
specific letter referred to in the testimony of the
defendants' witness at a subsequent stage of the
trial. No request was made to the court to require
the witness to produce any letter or letters. Rather,

the claim is that the trial judge should have acted on his own initiative. However, William Glenn English denied making, in any letter to his brother or sister-in-law, statements of the character referred to by counsel in his questions, and Juanita English denied seeing any such letter. No claim is made that defendants had caused a *subpoena duces tecum* to be served on either Richard or Juanita English. In view of the situation presented, there was no error on the part of the trial judge in connection with the matter. He was not required to assume that the witnesses for the people had testified falsely.

In his closing argument to the jury counsel for defendants, as disclosed by the record, undertook to discuss at some length his claim as to the law applicable to the case. It appears that he insisted on his right to read to the jury statements setting forth the law as he claimed it to be, including requests to charge that he had prepared for submission to the court. Objection was made by the prosecutor, and counsel's right to pursue the course that he was obviously following was challenged. The trial judge indicated specifically that counsel was entitled to state his theory of the law in his argument, but questioned the right to read to the jury as he was attempting to do. It is now contended that counsel was unduly limited in his argument, although it does not appear that he was not permitted to state, as fully as he desired, his theory and claim as to applicable legal principles. The record fails to disclose error in this respect of which appellants are entitled to complain.

After the death of Frank Cline there was found in his store an account book in which he had apparently kept a record of sales made by him in the course of business. On behalf of the people, testimony was offered, including that of a handwriting expert, that all the entries in the book were in the

handwriting of Mr. Cline. The last entry, ostensibly made on April 26, 1949, covered the sale of 2 polo shirts. The witness who first discovered Mr. Cline following the attack made on him testified that the latter made some statement to the effect that he had sold a polo shirt to a man who had subsequently returned to assault him. It is contended that such statement, notwithstanding the condition of Mr. Cline at the time he made it, must be accepted as conclusive proof that he had sold but a single polo shirt to English, and that, in consequence, the entry in the book was a forgery. Counsel advanced such claim in his final argument. Objection thereto was made, and the trial judge remarked that there was no testimony tending to show that the particular entry in question was forged. However, counsel was assured that he might make the claim if he so desired, and the record indicates that he persisted therein. It is now urged that the court's remark constituted prejudicial error. Obviously, however, the members of the jury were aware of the proofs that had been introduced before them. We do not think that any juror could possibly have been misled by either the objection of the prosecutor or the remark of the court. Mr. Cline might have made an erroneous entry in his sales book, but the record fully supports the remark of the trial court as to the absence of any proof of forgery.

Defendants submitted to the trial judge a number of requests to charge, many of which were given and others of which were substantially covered. One of the stated reasons for appeal enumerates 18 requests and avers that the trial court was in error in refusing to give them in the form submitted. A similar claim of error was made in *People v. Sweeney, supra,* with reference to which it was said:

"If it is intended this assignment of error is to be taken distributively, the language used is insufficient for that purpose. The substance of several of the requests was given in the charge, which disposes of this error as assigned."

In the case at bar the record indicates that several of the enumerated requests were waived. Others were covered in substance in the general charge, or were given in a modified form. The rights of the defendants were fully protected, and any claim that they were prejudiced because of the court's failure to give all of the requests in the form submitted is not tenable.

Further claims on behalf of appellants, that the motion for a new trial was improperly denied, that the trial court was in error in not granting a new trial on his own motion, and that appellants have been deprived of their liberty without due process of law, do not require specific consideration. Our examination of the record brings us to the conclusion that defendants had a fair trial in which their rights were fully and carefully safeguarded, that they were represented by able and experienced counsel, and that the proofs in the case fully justified and supported the verdict returned by the jury.

We find no reversible error, and the verdict and sentences are affirmed.

REID, C. J., and BOYLES, NORTH, DETHMERS, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.